JOSIAH QUINCY & another *vs.* GEORGE O. CARPENTER & others.

Suffolk.    Jan. 10. — May 4, 1883.    FIELD & W. ALLEN, JJ., absent.

An indenture of lease contained the covenants that the lessee would, during the term, "pay all extra insurance upon the demised premises occasioned by any use to which the same may be put by the lessee or those claiming under him ; " and that the lessor would " keep the premises well insured." The lessor procured insurance on the premises for a term of years, and the lessee paid him a certain sum for " extra insurance " paid by the lessor on the policies, and another sum for such " extra insurance " of the preceding year, and took a receipt from the lessor, which recited that he had received from the lessee the total sum so paid, " being in full settlement of all extra insurance " on the demised premises. All the insurance companies in which the policies were taken failed during the term for which they were issued, and the lessor thereupon reinsured the premises and paid a further sum as " extra insurance," and then brought an action against the lessee to recover the sum so paid. *Held*, that the receipt was a full discharge of the sum sued for.

CONTRACT upon covenants in leases of two stores in Boston. The case was referred to an auditor, who reported the following facts :

The plaintiffs seek to recover money paid for extra insurance occasioned by the use to which the demised premises were put by the defendants under certain indentures of lease. The

clauses in the leases upon which the plaintiffs seek to recover are the same in each lease, and are as follows:

" And said lessees, for themselves and those having their estate in the premises, hereby covenant with the said lessor and his heirs and assigns that they will, during said term, . . . . pay all extra insurance upon the demised premises occasioned by any use to which the same may be put by the lessees or those claiming under them.

" And the lessor covenants for himself and his heirs and assigns, with the lessees and those having their estate in the premises, that he will keep the premises well insured, the lessees as hereinbefore provided, paying for extra insurance occasioned by the use to which the premises may be put by them or those claiming under them.

" It is further mutually agreed that in case the building now standing on the demised premises shall be destroyed or damaged by fire or other casualty, during the aforesaid term, the rent herein reserved to be paid, or a reasonable portion thereof, shall abate until the buildings shall be rebuilt, or said damage shall be repaired, or this lease shall then determine at the election of the lessor or those having his estate in the premises, unless the said lessees or those having their estate in the premises shall elect to rebuild or repair the same, and in case they shall do so, they shall have the right to use, on such rebuilding or repairing, so much of the money for which said buildings shall be insured as shall be needful therefor."

The leased premises were used by the lessees partly in grinding paint and partly as a grist-mill, which use compelled the lessors to pay extra insurance thereon. The lessees had paid the extra insurance up to January 1, 1870. In April 1871, five years' policies of insurance were taken upon the leased premises, running from April 1, 1871, to April 1, 1876.

Upon the taking of these policies the defendants paid to the plaintiffs the sum of $1846.45, being, as estimated by the parties, the sum of $1355.38 for " extra insurance " under the leases paid on the five years' policies, and the sum of $491.07 for such " extra insurance " of the preceding year; and they then took from the plaintiffs the following receipt: " Boston, April 21, 1871. Received of Carpenter, Woodward and Morton eighteen

hundred and forty-six and $\frac{45}{100}$ dollars, being in full settlement of all extra insurance on stores Nos. 73 and 75 and Nos. 77 and 79 Clinton Street, to April 1, 1876, in accordance with my leases of said stores to Messrs. Banker and Carpenter.    $1845.45.    Josiah Quincy."

All the insurance companies in which said five years' policies were taken failed at the time of the great fire in Boston in 1872. The plaintiffs thereupon reinsured the demised premises, and for the time between the failure of said companies and November 27, 1875, paid, as extra insurance, named in the leases as insurance which the lessees were to pay, sums amounting to the sum of $1624.82.

The auditor found that the defendants owed the plaintiffs said sum of $1624.82, and the sum of $642.38, interest on said sum from the times of payment to July 27, 1880, the date of the report, being in all the sum of $2267.20, unless the court should be of the opinion that the above receipt was, as the defendants contended, a full discharge to the defendants from the payment of any further "extra insurance" named in the leases between the date of said receipt and November 27, 1875.

At the trial in the Superior Court, before *Aldrich*, J., the plaintiffs put in evidence the original leases and the auditor's report.    No other evidence was put in by either side.    The judge ruled, against the plaintiffs' objection, that the receipt was a full discharge to the defendants from the payment of any further extra insurance named in the leases between the date of said receipt and November 27, 1875; and, upon the evidence, directed the jury to return a verdict for the defendants; and reported the case for the determination of this court. If the ruling and direction were correct, judgment was to be entered on the verdict; otherwise, a new trial to be ordered.

*D. E. Ware*, for the plaintiffs.

*I. R. Clark*, for the defendants.

C. ALLEN, J.    No technical rule cuts off the defence.    Payment, accord and satisfaction, performance and waiver, may be proved by parol, though the obligation is under seal.    *Farley* v. *Thompson*, 15 Mass. 18, 25.    *Munroe* v. *Perkins*, 9 Pick. 298, 302.    *Mill Dam Foundery* v. *Hovey*, 21 Pick. 417, 429.    *Small* v. *Jenkins*, 16 Gray, 155.

The necessity for construing the receipt grows out of a contingency which apparently was not contemplated by the parties; all the insurance companies in which policies had been taken having failed. The policies remained in force as contracts, but were valueless. By the terms of the lease, the lessors reserve to themselves a large discretion in relation to insurance. It was contemplated that the lessees would make an extra-hazardous use of the premises. The lessors are to keep the premises well insured, and the lessees are, during the term, to pay all extra insurance occasioned by any use to which the premises may be put by them. The lessors may determine in what companies they will insure, and may agree upon rates of premium, without consultation with the lessees. They may also fix the amount of insurance which they will carry, and change from one insurance company to another, whenever they may think it expedient, either for the purpose of better security, or of obtaining lower rates of premium. In these respects, their only duty to the lessees is to exercise good faith and reasonable diligence and prudence for the protection of the interests of the lessees. The amount which the lessees will be bound to pay will be the amount actually paid by the lessors for extra insurance, and this may have to be ascertained by estimation. The lessors may take policies for longer or shorter terms, within the usual periods of insurance, at their discretion. No time is fixed in the lease for an accounting, but, in view of the duration of the lease, the lessees would be bound to pay from time to time, as the premiums may be paid by the lessors, and subject to a final accounting in case of subsequent changes; as, for example, if, on the one hand, the amount of premiums is diminished by changes from one company to another, or by a diminution of rates; or if, on the other hand, the amount is in like manner increased.

In the present case, an insurance for five years had been effected in different companies, and the premiums therefor had presumably been paid by the lessors. With the above-mentioned possibilities existing, as to an increase or diminution of the amount which might be required to keep up the insurance during the five years, the parties met and completed the transaction of which the receipt is evidence. It must be assumed

that the defendants would not be at liberty, by any voluntary change of business, to subject the plaintiffs to the payment of greater rates during the time covered. This is essential to fair dealing between the parties. The insurance was based upon the kind of business which was then carried on, and it would not be consistent with good faith for the lessees to make the risk more hazardous, and thus increase the necessary rates or premiums, without also at the same time assuming to pay the amount of the increase. Any possible variation, therefore, in the amount of premiums, which may arise from the voluntary act of the defendants to the injury of the plaintiffs, is to be laid out of the case. The parties cannot be held to have contemplated a change which would not be consistent with good faith; and the language of the receipt should not be held to embrace such changes. We are of opinion, however, that the terms of the receipt must be held to cover all such changes as must in law be deemed to have been within the contemplation of the parties. These terms are very broad. The sum named is received in full settlement of all extra insurance to April 1, 1876. It does not distinctly appear that this sum was arrived at by computation, as the amount actually paid by the plaintiffs for such extra insurance, though perhaps this is implied by the word "estimated." But this is not a very material consideration. However the fact may have been, this sum might nevertheless prove at last to be either more or less than that finally due. The sum which would be finally due must depend on contingencies. *Prima facie*, the receipt shows an intention to make a settlement of an item which might be variable. By making this settlement, no doubt a future exercise of good faith on each part is implied; that is to say, the lessors must keep the property well insured, and would not be at liberty to cancel the policies with a view of avoiding the payment of any premiums, and the lessees must not make a substantial increase of risk.

But, so far as contingencies may fairly be contemplated, we think each party is bound by the settlement to assume the chance of such changes as may ensue. The possible occasion for making a change of insurance from one company to another must be deemed to have been contemplated. So great a calamity as actually occurred would not be within the expectation of

parties. But this is a difference of degree. The principle would be the same if the lessors became distrustful of the solvency, or of the fairness of the management, of a single company, and for that reason, in the exercise of a reasonable discretion, determined to make a change. But for the settlement, such change might be made, and the lessees would be bound to pay the increase of rate, or entitled to receive back the amount saved in case the rate was diminished. By the settlement, each party must be held to take his own risk of such changes. The question is not free from difficulty; but, upon the best consideration we can give, we are of opinion that *prima facie* the receipt and settlement cut off any claim for such future payments. No attempt was made to control or explain the construction of the receipt which its words would naturally bear, in view of the circumstances under which it was given; if, indeed, extrinsic evidence for that purpose would be competent.

*Judgment on the verdict.*